IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SHARON COVERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-009 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Sharon Coverson ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.  BACKGROUND**

Plaintiff, a forty-five year-old with a high school education and past work experience as a beauty supply assistant manager, restaurant cashier, customer service representative, security officer, package sorter, and day care teacher, protectively applied for DIB and SSI

on May 23, 2011, alleging a disability onset date of March 10, 2010. Tr. ("R."), pp., 298-304. The Social Security Administration denied Plaintiff's applications initially, R. at 231-38, and on reconsideration, R. at 240-49. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 251-254, and the ALJ held a hearing on May 16, 2013, R. at 207-26. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel and Bassey A. Duke, a Vocational Expert ("VE"). Id. On May 23, 2013, the ALJ issued an unfavorable decision. R. at 187-199.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520, 416.920 the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: bilateral ivitis, gastroesophageal reflux disease (GERD), sarcoidosis, and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 404.1567(a)[1] and 416.967(a) except that she can occasionally climb ramps and stairs but never ladders and scaffolds. She can occasionally balance, stoop,

---

[1] As defined in 20 C.F.R. § 404.1567, sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> kneel, crouch, and crawl. She can never be exposed to hazards such as unprotected heights, moving mechanical parts, or operating a motor vehicle. The claimant can never be exposed to dusts, odors, or other pulmonary irritants. She needs the ability to change positions from sitting to standing at will.
>
> 5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

R. at 187-99.

When the Appeals Council denied Plaintiff's request for review, R. at 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ did not provide good cause for discounting the opinion of treating physician Dr. Charles Jackson, and (2) the Appeals Council improperly disregarded new evidence that shows Plaintiff's condition had worsened during the relevant time period rather than stabilized. (See doc. no. 11 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards.

3

Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Did Not Demonstrate Good Cause for Discounting the Opinion of Dr. Jackson.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). A treating physician's opinion may be properly discounted if (1) it is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Winschel v. Comm'r

of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities).

Here, Dr. Charles Jackson, M.D., gave a total of four opinions on disability. R. at 521, 558, 639-40, 658. In two of the opinions, Dr. Jackson simply lists Plaintiff's medical impairments and opines that she is totality and permanently disabled. (R. at 558, 657.) Another of the opinions lists her clinical history and states "[w]e are requesting that this YOUNG lady be given SSI/Social security so that she can get a diagnosis, treatment and return to a roductive [sic] life." R. at 521. However, Dr. Jackson's last opinion, given on April 25, 2013, gives specific functional limitations for Plaintiff, stating that she can do no lifting over five pounds, no sitting over thirty minutes, and no standing over ten minutes. R. at 639. In this opinion, Dr. Jackson goes on to opine that Plaintiff is permanently and totally disabled, consistent with his other opinions. R. at 640.

The ALJ rejected the three opinions that did not give functional limitations on the basis that they simply expressed an opinion reserved for the commissioner. R. at 195. As to the April 25, 2013 opinion, the ALJ gave two reasons for rejecting this opinion as follows:

> The overall evidence does [not] support Dr. Jackson's conclusions as to the claimant's limitations. For example, the claimant noted in August 2011 that she was "completely independent in activities of daily living." Ex. 4F/3. Further, Dr. Jackson diagnosed the claimant in September 2012 and October 2012 with possible cancer. Exs. 17F, and 22F/21 and 22. However, as Mr. Morton conceded at the hearing, Dr. Jackson was wrong in this respect. The

6

evidence, as noted above, does not indicate that the claimant's lung problems, due to sarcoidosis not cancer, have progressed. Mr. Morton noted that Dr. Jackson was "zealous" in his statements. I attach little weight to Dr. Jackson's statements in this decision.

R. at 195. However, these two reasons do no provide good cause for discounting Dr. Jackson's opinion as to Plaintiff's functional limitations.

First, in support of the assertion that the overall evidence does not support Dr. Jackson's conclusion, the ALJ cites a report from a consultative examiner on August 31, 2011 stating that Plaintiff was "independent in activities of daily living. R. at 440. The ALJ describes this as a statement by Plaintiff whereas it was actually made by the consultative examiner. R. at 195. More importantly, this examination occurred before Plaintiff's ten-day hospitalization in September of 2011 at Fairview Park Hospital when she was ultimately diagnosed with sarcoidosis, and her physicians performed surgery. R. at 450-89. Thus, the consultative examiner's opinion was given without benefit of the sarcoidosis diagnosis. Further, the ALJ failed to acknowledge the low utility of an "unremarkable" examination made without the concrete objective findings discovered three weeks later or the physical ailments that caused her to be hospitalized for over a week. Thus, in determining whether the treating physician's opinion as to functional limitations should have been given great weight, it was inappropriate by the ALJ to rely on a consultative examination that did not even the benefit of her primary diagnosis and accompanying records generated during her hospitalization.

Second, although the ALJ does not point to any specific evidence in the record that does not support Dr. Jackson's limitations, her overall assessment that "the claimant

7

recovered from her surgery and that her signs stabilized" with "CT scans show[ing] stable, non-growing nodules" seems to be based on misconception of the evidence. R. at 195. The ALJ notes that during her hospital stay from September 25, 2011 until October 6, 2011, the doctors "found a lung mass and pulmonary modules," and she had "surgery to remove these nodules." R. at 194. However, the record reveals no surgery to remove the nodules in her lungs, just surgery to remove a nodule in her neck and a lesion on her right cheek for a biopsy to check for malignancy. R. at 496.

Furthermore, the ALJ'S conclusions based on the CT scans also misconstrue crucial evidence. The ALJ points to an October 2012 CT scan showing nodules in the bilateral lung bases of approximately 2mm with a tree bud appearance and to a follow up CT scan in January 2013 showing no changes. R. at 194, 552-53, 592. The October 2012 CT scan referenced was a CT scan of the abdomen and pelvis, and there is no evidence that any imaging beyond the lung base was actually captured by the scan. R. at 598. Contrasting with this CT scan, a chest X-ray performed the same date remarks "there is diffuse increased markings in the lung fields which have unequivocally increased when compared to the January 2011 study. There is somewhat confluent in the right perihilar region but have predominant reticula nodular appearance . . . ." R. at 597. The ALJ makes no note of this X-ray. The January 2013 CT scan quoted by the ALJ appears to actually be an X-ray as well. R. at 592. This records notes "there is patchy nodular infiltrates and nodular opacities throughout both lung fields" rather than just in the lung base. R. at 592. The ALJ does not discuss whether this record's reference of the lungs being unchanged from the October 29,

2012 study refer to the previous CT scan or X-ray. Rather, the ALJ assumed that the nodules were unchanged from the tree bud-like nodules observed in the October 2012 abdominal CT scan.

In addition, the ALJ placed too much reliance on Dr. Jackson's alleged cancer diagnosis to discredit his opinion. Dr. Jackson's records are clear that this was simply an initial tentative diagnosis and that he wanted Plaintiff to go to Emory for a diagnostic evaluation of her lung mass. R. at 558, 657, 658. Thus, Dr. Jackson's tentative diagnosis for referral purposes provided weak evidence, at best, for disregarding his opinion.

Accordingly, the ALJ's narrative that after Plaintiff's surgery, her sarcoidosis largely resolved as shown by various CT scans is not confirmed by the evidence. At most, the evidence cited by the ALJ showed unchanged nodules in Plaintiff's lung base without acknowledging the accompanying X-rays. Further, Dr. Jackson's tentative cancer diagnosis does not provide strong evidence for disregarding his opinion. Thus, the ALJ failed to provide good cause for assigning little weight to Dr. Jackson's opinion.

**B.  The Appeals Council Erred in Finding the June 20, 2013 CT Scan not Chronologically Relevant to the ALJ's Decision.**

Plaintiff also submits that it was error for the Appeals Council not to remand her case based on new evidence submitted showing that her sarcoidosis had progressed. (Pl.'s Br., p. 18.) The earliest of these records is dated June 20, 2013, approximately a month after the hearing, and states "[t]here is significant progression of micronodular disease within both lungs since the previous study." R. at 181. Plaintiff argues this record relates to her medical

condition of sarcoidosis and is thus, relevant to the time period of the ALJ's decision. (Pl.'s Br., p. 19.)

Under Eleventh Circuit law, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). In other words, when the Appeals Council denies review despite the submission of additional evidence, the determinative inquiry is whether Plaintiff has submitted "new, material, chronologically relevant evidence" to the Appeals Council that "renders the decision of the [ALJ] to deny benefits unsupported by substantial evidence." Id. at 1261, 1266. "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)).

In order to be chronologically relevant, new evidence must relate to the period on or before the date of the ALJ's decision. See Enix, 461 F. App'x at 863 (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (providing that, in order to be probative of whether the person was disabled during the period under review, evidence must relate to that period); see also Lipscomb v. Comm'r of Soc. Sec., F. App'x 903, 907 (11th Cir. 2006) (questionnaire related to the time period under consideration by ALJ because doctor "indicated that his questionnaire answers related to his perception of [claimant's] condition

as it existed prior to the ALJ's decision" by basing the opinion on both his treatment records and those from other doctors, all dated during the relevant time period).

The Appeals Council rejected the evidence as not being chronologically related to the ALJ's decision dated May 23, 2013, stating that it "about a later time." R. at 2. However, the plain language of the record makes it chronologically relevant to the time period before May 23, 2013. The examination of the CT scan dated June 20, 2013, less than thirty days after the hearing, specifically states that Plaintiff's nodular densities in her lungs have increased since the abdominal CT scan performed on October 2012, deeming this a significant progression. R. at 181. Unlike consultative evaluations or other examinations that might express an opinion on a claimant's functional limitations on a specific day, the plain import of this record is that Plaintiff's sarcoidosis has progressed over time since the October 29, 2012 CT scan, thus making it relevant prior to the date it was made. Cf. Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir.1983) ("[A] treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." (citing Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir.1981)), *superseded on other grounds by* 42 U.S.C. § 423(d)(5)). Accordingly, the Appeals Council erred in finding this record chronologically unrelated to the decision date.

Further, this record, undoubtedly new given its date, directly contradicts the ALJ's assertion that since the October 2012 CT scan, Plaintiff had shown stable, non-growing nodules. R. at 195. It also belies the conclusion that surgery had improved her overall situation to the point where her lung masses and nodules were not growing. R. at 196.

11

Because this evidence contradicts a critical assertion made by the ALJ's opinion as discussed *supra*, there is a reasonable possibility that it could change the administrative result and would be material to the ALJ's overall conclusion that Plaintiff is not disabled.

However, the other three records submitted to the Appeals Council do not merit consideration upon remand because they are not chronologically relevant. Although these records support the assertion that Plaintiff's disease has progressed, they do not contain the same clear reference to the October 2012 study and do not make a conclusion of progression from that time period. See R. at 78, 97, 143. Further, these records are more remote in time from the ALJ's decision date, all occurring at least three months out from the decision. Putting these two factors together, the Court finds that Plaintiff has not shown these records are chronologically relevant to the ALJ's decision.

Accordingly, the Court finds that the Appeals Council erred in failing to consider the June 20, 2013 record but did not err in refusing to consider the other records.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED**

and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 25th day of January, 2016, at Augusta, Georgia.

 _____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA